UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEFFERY WILLIAMS,

        Plaintiff,

v.

PETER SICES et al.,

        Defendants.
_____/

Case No. 1:24-cv-1130

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that Defendants are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way Defendants are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record

2

does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's action for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains occurred there. Plaintiff sues MDOC Director Heidi Washington, as well as the following MTU personnel: Warden Melinda Braman, Health Unit Manager Heidi Smith, Medical Provider Peter Sices, and Registered Nurses Diana Whitelock, Mary Eikenhout, Michelle Kidd, and Melissa Lorenz. Plaintiff indicates that he is suing Defendants Sices,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Whitelock, Eikenhout, Kidd, and Lorentz in their official and personal capacities. He does not indicate in what capacity he is suing Defendants Washington, Braman, and Smith.

Plaintiff alleges that before he arrived at MTU on April 2, 2024, he saw the healthcare department at his previous facility "for a routine check[-]up prior to [his] arrival." (Compl., ECF No. 1, PageID.4.) Plaintiff avers that he had been experiencing rashes on his upper chest, arms, shoulders, legs, stomach, and back. (*Id.*) Healthcare providers at Plaintiff's previous facility had prescribed betamethasone dipropionate cream and Bactrim sulfameth-trimeth. (*Id.*) Plaintiff was told to finish the medication and that he would be seen in one week. (*Id.*)

Plaintiff alleges that his skin "became more inflamed" and "specific areas turned into bloody rashes." (*Id.*) Plaintiff's leg was swollen, and on some days he could not walk or get out of bed. (*Id.*) Plaintiff saw Defendant Sices on April 26, 2024, and Defendant Sices diagnosed Plaintiff with psoriasis. (*Id.*) Defendant Sices prescribed more Bactrim, as well as clindamycin capsules. (*Id.*)

Plaintiff was sent offsite to see a dermatologist on August 19, 2024. (*Id.*) The dermatology nurses told Plaintiff that his skin condition was eczema, not psoriasis. (*Id.*) Plaintiff contends this diagnosis shows that Defendant Sices misdiagnosed Plaintiff and "repeatedly prescribed medication for a skin disease [that] [P]laintiff [does not] have." (*Id.*) Plaintiff goes on to state that Defendants Whitelock, Eikenhout, Kidd, and Lorentz were aware of Plaintiff's medical issue "and failed to see [him] on numerous [] occasions," telling Plaintiff that he would have to wait to be seen by Defendant Sices. (*Id.*)

Plaintiff alleges that the "last few months [have] been very difficult and [have caused] emotional distress." (*Id.*, PageID.5.) Plaintiff states that there are "black blotches" on his skin, and that he experiences difficulty using many soaps and lotions because many of those items cause his

4

skin to burn and flare up. (*Id.*) Plaintiff experienced "uncontrollable" itching and avers that "it took months before healthcare would give anything to reduce the itching." (*Id.*)

Plaintiff claims that he has been in physical altercations because of people talking about his skin, and that he has lost relationships from this issue. (*Id.*) Plaintiff used to work out, but is now "very insecure about taking off his shirt because of all the black spots." (*Id.*) Plaintiff claims that when his skin was "leaking bloody fluids," he would need his sheets and clothes washed multiple times a day. (*Id.*)

Plaintiff has attached several pages of medical records and medical kites to his complaint. The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to the plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20- 4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in the documents Plaintiff attaches to the complaint except to the extent that Plaintiff relies on the truth of those statements in his complaint.

Because Plaintiff has submitted documents regarding his treatment and when he received it, the Court accepts as true the statements made by the providers at MTU. "When a document attached to the complaint contradicts the allegations, the document trumps the allegations . . .[if the] document . . . 'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020).

On May 5, 2024, Plaintiff submitted a kite about his skin, stating that the condition had not gotten any better with the medication he had been prescribed. (ECF No. 1-3, PageID.15.) Plaintiff asked for "some type of medical lotion" such as "minerin cream" (*Id.*) Defendant Eikenhout responded and noted that Plaintiff had a follow-up appointment with the medical provider scheduled once he finished his antibiotic regimen and noted that lotion and minerin cream would "not change [the] lesions." (*Id.*) Defendant Eikenhout told Plaintiff to continue to take his antibiotics, to wash his hands frequently, and to avoid scratching the areas. (*Id.*)

On May 16, 2024, Defendant Eikenhout responded to another kite sent by Plaintiff. (ECF No. 1-4, PageID.17.) Plaintiff complained that his skin had not gotten better and that his legs were starting to swell. (*Id.*) Defendant Eikenhout reiterated that Plaintiff had a medical provider appointment pending. (*Id.*)

Defendant sent another kite on May 21, 2024, complaining that his skin was getting worse and that he was having difficulty walking because of the swelling in his leg. (ECF No. 1-5, PageID.19.) Defendant Eikenhout responded that Plaintiff could discuss his concerns at his appointment with the medical provider. (*Id.*)

On May 29, 2024, Defendant Sices noted that Plaintiff's lab work indicated deficiencies in vitamins B12 and D. (ECF No. 1-2, PageID.13.) Defendant Sices noted that he had missed informing Plaintiff of those deficiencies when "discussing the psoriasis." (*Id.*) Defendant Sices

6

told Plaintiff to "[p]lease accept [a] vitamin D capsule daily for up to six months: this may also help with your skin condition." (*Id.*) Defendant Sices also noted that Plaintiff would need to receive vitamin B12 injections. (*Id.*) Plaintiff would "need one each week for four weeks and then once each month for now." (*Id.*)

On May 30, 2024, Plaintiff submitted a kite asking to receive Ensure health drinks because of his vitamins B12 and D deficiencies. (ECF No. 1-6, PageID.21.) Defendant Eikenhout responded, telling Plaintiff he did not meet the qualifications for Ensure and that the medical provider "does have a plan in place to treat the B-12 and D deficiency." (*Id.*) She noted that Plaintiff was to receive "oral replacement" for vitamin D as well as vitamin B12 injections. (*Id.*)

On June 4, 2024, Plaintiff sent another kite, stating that after receiving a vitamin B12 injection, he had been experiencing shortness of breath. (ECF No. 1-7, PageID.23.) Plaintiff noted that he was told to notify the doctor if he experienced that side effect. (*Id.*) Defendant Eikenhout responded, noting that she had spoken to Plaintiff on the telephone and that he would be scheduled for an appointment to be evaluated by a nurse. (*Id.*) She told Plaintiff to notify healthcare or corrections staff if his symptoms became worse before that appointment. (*Id.*)

On June 8, 2024, Plaintiff submitted a kite asking about the next step in treatment for his skin condition since he was almost done with the ointment he was given. (ECF No. 1-8, PageID.25.) Plaintiff noted that the swelling had gone down, but that he was still experiencing itching. (*Id.*) Defendant Kidd responded that Plaintiff would be scheduled for an appointment and that he should still continue treatment as prescribed. (*Id.*) She also told Plaintiff to notify the healthcare department regarding "any signs or symptoms of a skin infection." (*Id.*)

On June 9, 2024, Plaintiff submitted another kite about the itching he was experiencing. (ECF No. 1-9, PageID.27.) Defendant Lorentz responded that Plaintiff was scheduled to see the

7

medical provider about his psoriasis in about two weeks. (*Id.*) She noted that Plaintiff could re-kite to be seen by a nurse if he felt that he needed to be seen sooner, but that there would be a co-pay for a nurse visit. (*Id.*)

On June 10, 2024, Plaintiff submitted a kite asking for a refill on his ointment. (ECF No. 1-10, PageID.29.) Defendant Whitelock responded, telling Plaintiff that it was too soon for a refill because he had received the last one on May 29, 2024. (*Id.*) She advised Plaintiff to re-kite closer to June 29, 2024. (*Id.*)

On June 25, 2024, Plaintiff submitted another kite, asking when he would seen by the medical provider and noting that his skin was flaring up and becoming more painful. (ECF No. 1-11, PageID.31.) Defendant Eikenhout responded, telling Plaintiff that his appointment with the provider had been rescheduled and that it was scheduled for about "one weeks' time." (*Id.*) She told Plaintiff to re-kite if he wanted a nursing evaluation scheduled prior to that appointment. (*Id.*)

On August 20, 2024, Plaintiff submitted a kite asking when he would see the medical provider for a follow-up after his appointment with the dermatologist. (ECF No. 1-12, PageID.33.) Plaintiff indicated that he had been told his skin condition was eczema and that he would be receiving Dupixent. (*Id.*) Non-party Registered Nurse Gerrianne Clark responded and told Plaintiff that the paperwork from his offsite appointment had been received and given to the provider for review "to order medication/make an appointment." (*Id.*)

On September 4, 2024, Plaintiff sent a kite asking when he would see the medical provider and receive Dupixent. (ECF No. 1-13, PageID.13.) Plaintiff noted that he had just "picked up some more [t]herapeutic moisturizing crème" but that it was not helping his skin. (*Id.*) Defendant Lorentz responded, noting that Plaintiff was scheduled for his first Dupixent injection "probably before you even get this kite response, and will be scheduled every 2 weeks thereafter." (*Id.*) She

also told Plaintiff that the medical provider would follow up "some time near the end of October or beginning of November." (*Id.*)

Based upon the foregoing, Plaintiff asserts Eighth Amendment claims premised upon deliberate indifference to his serious medical needs. (Compl., ECF No. 1, PageID.5.) Plaintiff seeks a "permanent injunction ordering each [D]efendant to cease their lack of treatment towards [Plaintiff]." (*Id.*, PageID.6.) Plaintiff also seeks compensatory and punitive damages. (*Id.*)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

9

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As set forth *supra*, Plaintiff contends that Defendants violated his Eighth Amendment rights by failing to provide adequate medical treatment.

### A.   Claims Against Defendants Washington, Braman, and Smith

Although Plaintiff has named Director Washington, Warden Braman, and Health Unit Manager Smith as Defendants, he fails to mention them in the body of his complaint, much less allege that they took any action against him. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Plaintiff's claims against Defendants Washington, Braman, and Smith, therefore, fall short of the minimal pleading standards under Rule 8 of the Federal rules of Civil Procedure and are subject to dismissal for that reason alone. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the Court will dismiss Defendants Washington, Braman, and Smith.

### B.     Claims Against Defendants Sices, Whitelock, Eikenhout, Kidd, and Lorentz

Plaintiff contends that Defendants Sices, Whitelock, Eikenhout, Kidd, and Lorentz violated his Eighth Amendment rights by providing inadequate medical care for his skin condition.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would result in unnecessary suffering without serving any penological purpose. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) "The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency." *Id.* at 103–04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for deliberate indifference to serious medical needs has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

"To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (citing *Farmer,* 511 U.S. at 837). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or

11

omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Rhinehart v. Scutt*, 894 F.3d 721, 750–51 (6th Cir. 2018); *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 944 (6th Cir. 2010)). Further, "[w]here the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he

received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (6th Cir. 1989)).

As set forth above, Plaintiff was initially diagnosed with psoriasis, but that diagnosis was later changed to eczema. Multiple courts, including this one, have concluded that dermatological conditions such as eczema and psoriasis are simply not sufficiently serious to implicate the Eighth Amendment. *See, e.g.*, *Sledge v. Kooi*, 564 F.3d 105, 107 (2d Cir. 2009) (per curiam) (holding that eczema is not an objectively serious medical condition under the Eighth Amendment); *Tsakonas v. Cicchi*, 308 F. App'x 628, 632 (3d Cir. 2009) (holding that eczema and athlete's foot are not objectively serious medical conditions under the Eighth Amendment); *Tasby v. Cain*, 86 F. App'x 745 (5th Cir. 2004) (holding that although the plaintiff "suffered a rash" that "does not establish that he suffered 'serious harm'"); *Young v. Jourden*, No. 1:19-cv-854, 2021 WL 849324, at *13 (W.D. Mich. Feb. 5, 2021), *report and recommendation adopted in part, rejected in part on other grounds*, 2021 WL 716896 (W.D. Mich. Feb. 24, 2021) (finding that a plaintiff's eczema, which caused cracked and dry skin that bled when the plaintiff scratched it, was not an objectively serious medical condition); *Cox v. Hartshorn*, 503 F. Supp. 2d 1078, 1085 (C.D. Ill. 2007) (holding that a fungal rash is not an objectively serious medical condition); *Gray v. Ghosh*, No. 12 C 194, 2013 WL 5497250, at *1 (N.D. Ill. Oct. 3, 2013) (collecting cases).

In any event, even if the Court presumes that Plaintiff has sufficiently alleged facts suggesting a serious medical need, Plaintiff has not sufficiently alleged facts for the subjective prong of the inquiry. First, with respect to Defendant Sices, it is clear from Plaintiff's allegations and exhibits that Defendant Sices provided treatment to Plaintiff. He diagnosed Plaintiff with psoriasis and prescribed Bactrim and clindamycin. (Compl., ECF No. 1, PageID.4.) Plaintiff was

13

later diagnosed with eczema instead. (*Id.*) Plaintiff faults Defendant Sices for misdiagnosing his condition and continuing to prescribe medication for a skin disease Plaintiff does not have. (*Id.*) However, "[t]he requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalizing of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *See Comstock*, 273 F.3d at 703. That is essentially what Plaintiff has done here—he has attempted to constitutionalize his claim that Defendant Sices misdiagnosed his skin condition. The Court does not minimize Defendant's experience; however, his complaint fails to state a claim against Defendant Sices. The facts alleged by Plaintiff suggest, at most, that Defendant Sices may have been negligent when he misdiagnosed Plaintiff with psoriasis, which is insufficient to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Plaintiff also faults Defendants Whitelock, Eikenhout, Kidd, and Lorentz for violating his Eighth Amendment rights. He suggests that they "had actual and full knowledge" of his skin condition and "failed to [see] him on numerous occasions but would only inform [him] . . . that [he] would have to wait to be seen only by Defendant Sices." (Compl., ECF No. 1, PageID.4.) Plaintiff's allegation that these individuals only told him that he would have to wait to be seen by Defendant Sices is flatly belied by Plaintiff's own exhibits. The numerous medical kites that Plaintiff submitted with his complaint indicate that Defendants Whitelock, Eikenhout, Kidd, and Lorentz timely responded to his kites, often on the same day or the day after receipt. Those individuals advised Plaintiff not to scratch at his skin, to continue his course of treatment, and that he was scheduled to see the medical provider. Plaintiff was told that if he wished to be seen prior to being seen by the medical provider, he could request a nursing evaluation. Nowhere in Plaintiff's

14

complaint does he allege that he took the nurses up on this offer and that they failed to evaluate him. Moreover, after a dermatologist diagnosed Plaintiff with eczema and prescribed Dupixent, Defendant Lorentz responded to Plaintiff's September 4, 2024, kite to inform him that he was scheduled for his first Dupixent injection and would receive an injection every two weeks. Although it is clear from Plaintiff's complaint that he disagrees with the responses to his kites by Defendants Whitelock, Eikenhout, Kidd, and Lorentz, "a patient's disagreement with his physicians [and other medical providers] over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (6th Cir. 2017) (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)). Plaintiff, therefore, cannot maintain Eighth Amendment claims against Defendants Whitelock, Eikenhout, Kidd, and Lorentz.

In sum, Plaintiff has failed to state claims for relief against Defendants Washington, Braman, and Smith because his complaint is entirely devoid of factual allegations regarding those individuals. Moreover, Plaintiff's claim that Defendant Sices misdiagnosed him with psoriasis does not rise to the level of an Eighth Amendment violation, and he has not alleged facts suggesting that Defendants Whitelock, Eikenhout, Kidd, and Lorentz were deliberately indifferent to his medical needs. Accordingly, Plaintiff's complaint will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir.

1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   November 26, 2024                    /s/ *Maarten Vermaat*
                                              Maarten Vermaat
                                              United States Magistrate Judge